

ORIGINAL

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

ANDREA LABARGE,                     ) CIV. NO. 04-00477SPK/KSC
                                    )
    Plaintiff,                      )
                                    )
                                    )                    FILED IN THE
    vs.                             )           UNITED STATES DISTRICT COURT
                                    )                 DISTRICT OF HAWAII
                                    )
UNIVERSITY OF HAWAI'I,              )                    DEC 2 8 2005
                                    )
    Defendant.                      )         at 12 o'clock and — min. ☐ M
                                    )            SUE BEITIA, CLERK
_____ )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This is an Equal Pay Act and gender discrimination-in-employment action.

Plaintiff Andrea LaBarge (Plaintiff or LaBarge) was an instructor for several years,

working under annually-renewed contracts, in the Department of Management and

Industrial Relations (MIR) in the College of Business Administration (CBA) at the

University of Hawai'i at Manoa.  After the MIR Department stopped hiring

instructors and LaBarge's last contract was not renewed, LaBarge brought this suit

asserting violations of the Equal Pay Act and Title VII for alleged gender

discrimination.  Defendant University of Hawai'i moves for summary judgment.

The matter was argued on November 30, 2005.  Having reviewed the pleadings and

filings and considered all written and oral argument, the Court hereby GRANTS

the Defendant's Motion for Summary Judgment.

I.

The parties are familiar with the background facts.  The Court sets forth

particular details here only as necessary to explain its ruling.  It is undisputed that

LaBarge had annual contracts to teach courses.  Her last contract expired in 2004,

when the MIR Department stopped hiring instructors (although apparently other

departments in the CBA still have some instructors).  "Instructors" are

differentiated from "lecturers" and other, perhaps more traditional, teachers on a

professorship track (e.g., assistant, associate, and full professors).  Graduate

students also teach.  A basic timeline of LaBarge's case is as follows, although

many details are not set forth in this chronology:

| | |
|---|---|
| 1989-1994 | LaBarge works as a lecturer in the MIR Department. |
| July 1994 | LaBarge hired as an instructor from 8/94 to 5/95 (temporary position for academic year) |
| March 1995 | LaBarge receives a letter regarding end of her appointment |
| June 1995 | LaBarge is then hired as a "part-time" (75% or .75 FTE -- "full-time equivalent") instructor, on "emergency basis" because it was an exception to an ongoing UH hiring freeze.  It was a nine-month (75%) term for August 1995 to May 1996.  The MIR Department or College of Business Administration needed an additional .75 position to meet accreditation standards. |
| July 1996 | The .75 FTE position renewed from August 1996 to May 1997. |
| 1996-2004 | The .75 FTE position renewed annually until 2004.  At most instances, LaBarge was notified that the position |

2

was not renewed, but later got a letter notifying her that
funds became available and she was re-hired for another
academic year. During this period, LaBarge often taught
additional courses (beyond a .75 FTE position) and was
paid on a course-by-course basis as a lecturer for the
additional teaching. It appears undisputed that LaBarge
was a competent, even perhaps exceptional, teacher.
There is no assertion that she was not rehired because of
performance.

Around 2001 or 2002, a decision was made not to utilize instructors in the

MIR Department. See Defendant's Exh. 15, email from Dr. Kelley to Plaintiff;

Plaintiff's Exh. 33, A00079 (Memo from Lane Kelley to David McClain).

LaBarge apparently was still eligible to teach courses as a lecturer but, because of

the MIR Department decision, not as a full-time (or part-time) instructor. There is

some question about whether there was an MIR Department faculty vote not to

have instructors. LaBarge essentially questions whether that was the officially-

adopted "policy." There is, however, undisputed evidence that the MIR

Department and others in the CBA had discussed and chosen to follow, at some

point, such a direction. See, e.g., Plaintiff's Exh. 33, A00079. Plaintiff was aware

of such direction. See, e.g., Defendant's Exh. 15.

Regardless of whether the internal steps were taken to adopt a formal policy

regarding teaching of courses by full (or .75 FTE) instructors, there are no longer

instructors in the MIR department. LaBarge apparently was the last instructor in

3

the MIR Department. The record is uncontradicted that the decision was based on a Department (or CBA) policy of having Ph.D. students teach courses and on other fiscal-type reasons (Dr. Bess, former CBA Dean and current MIR professor, indicates among other reasons an increased ability to attract tenured faculty). There is no evidence that the decision was based upon any kind of desire to reduce the number of female teaching positions or specifically to eliminate LaBarge from the college (again, all indications are that she was a popular and effective teacher).

A. Equal Pay Act

The Equal Pay Act of 1963 reads in pertinent part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

The Equal Pay Act claim is controlled by <u>Corning Glass Works v. Brennan,</u>

417 U.S. 188 (1974). LaBarge must prove that the Defendant or, more specifically, the MIR Department paid different wages to employees of the opposite sex for equal work. Id. at 195; Hein v. Or. Coll. of Educ., 718 F.2d 910, 913 (9th Cir.1983). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to prove that the differential in wages is justified under one of the Equal Pay Act's four exceptions. Corning Glass Works, 417 U.S. at 196; Hein, 718 F.2d at 913. If the defendant establishes a justification for the alleged differential, the plaintiff can still prevail by showing that the practice was used as a pretext for discrimination. Wambheim v. J.C. Penney Co., Inc., 705 F.2d 1492, 1495 (9th Cir.1983). There must be evidence of such pretext for a case to survive a summary judgment motion.

LaBarge's Equal Pay Act claim fails because she has not satisfied the evidentiary burden to prove a prima facie case. The "male counterpart" would be other male instructors in the MIR Department. That would be Mr. Dubey or perhaps Mr. Barclay in 1994-95, both of whom were paid less than her for equal work. She seeks to compare herself to another instructor, Mr. Dean Cost, in the College of Business Administration (who apparently is or was paid more than

her).[1] But Cost is in a different department (Financial Economics and Institutions) and teaches difference courses, with a different pay scale because of a different market.

Even if Cost were a comparable male instructor, Defendant has proffered a legitimate non-discriminatory reason (elimination of all instructor teaching positions in the department). Defendant also has a legitimate statutory exception ("a differential based on any other factor other than sex") which applies if a prima facie case is made. LaBarge has no evidence of pretext. That is, there is no evidence that the instructor positions in the MIR Department were eliminated as a reason not to renew her contract or to pay her less.

LaBarge appears to make a claim that her position was kept at .75 (rather than 1.0 FTE) from 1996 to 2004, when other male instructors were hired at full-time. But none of those instructors were in the MIR Department. Even if there were some benefits to a .75 position (she could consult outside of her UH teaching), her pay for a .75 position plus course-by-course pay on an instructor level would presumably be less than a 1.0 FTE position as an instructor. There is little evidence that she sought a full-time teaching position; but assuming she did

---

[1] Although the evidence in this regard is not clear, the Court will assume for purposes of this summary judgment motion that Cost was an instructor that was paid more than LaBarge.

seek a full-time position -- even on an informal basis -- there is no evidence that

the failure to hire her on other than a .75 FTE basis was pretextual.

B.  Title VII.

The familiar <u>McDonnell Douglas</u> burden-shifting test applies:

> A plaintiff can establish a prima facie case of a violation of Title VII
> by introducing direct evidence that an employer expressly
> discriminated against a job applicant or employee because of his or
> her gender, or by presenting indirect evidence that the plaintiff (1) was
> a member of a protected class, (2) she applied and was qualified for a
> position which she sought, (3) despite being qualified, she was
> rejected, and (4) after she was rejected, the position remained open
> and the employer continued to seek applications from people with
> comparable qualifications.

<u>Mondero v. Salt River Project</u>, 400 F.3d 1207, 1211 (9th Cir. 2005) (citing

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973) and <u>Wallis v. J.R.</u>

<u>Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994) (holding that a prima facie case may

be based on direct evidence or on a presumption that arises when the four-part

showing under the McDonnell Douglas framework is made)).

There is no prima facie case because the fourth element is missing.  The

instructor position was eliminated; it has not remained open and the MIS

Department has not continued to seek applications from people with comparable

qualifications.

Moreover, even if there were evidence of a prima facie case, Defendant has

7

proffered a legitimate, non-discriminatory reason for non-renewal of the contract (elimination of the instructor position) and the Title VII claim would then fail for lack of evidence of pretext. LaBarge points to an alleged cultural bias by Dr. Dharm Bhawuk (then-acting MIR Department Chair). LaBarge contends that Bhawuk, who is apparently Nepalese in origin and was trained in India, has made negative comments or insinuations regarding a woman's role in society or has an inherent cultural bias. Bhawuk had recommended in an internal email that LaBarge not be rehired because he wanted funds to pursue a visiting (female) professor and to "implement[] the departmental decision that we do not want to have long-term instructors." Plaintiff's Exh. 37, at A00023. Bhawuk's email actually supports the Defendant's position that MIR Department had decided much earlier to eliminate instructor positions in favor of lecturers and graduate students; it is not evidence that elimination was a pretext for gender bias or unequal treatment.

LaBarge also points to some anecdotal evidence of some kinds of improper treatment of women by others in the MIR Department (for example, a former chair of the Department allegedly attempted to strike a female secretary in the MIR Department, but no action was taken after the incident was reported). At best, these are in the nature of "stray" events, and not evidence of a hostile environment

8

or Department biased against women. In any event, there is no question but that LaBarge's instructor position was eliminated due to (1) a Department policy decision, and (2) a decision by then-CBA Dean David McLain not to renew her contract. Dean McLain was the decision-maker, not Bhawuk. Even assuming that there was some evidence Bhawuk was somehow biased against women, McLain was the decisionmaker, and there is no evidence McLain made his decision based upon LaBarge's gender.[2/] Again, however, there is no evidence of pretext. Indeed, it appears that Dean McLain along with others in the MIR Department (although initially opposing an increase) sought to obtain (and eventually succeeded in obtaining) a pay increase on behalf of LaBarge. And there is no evidence that LaBarge's employment arrangement (annually renewable .75 FTE position) was not a 1.0 FTE position because of her gender.

## II.

Accordingly, the evidence is insufficient to create a genuine issue of material

---

[2/] Bhawuk's involvement in the decision-making process could still be relevant towards discriminatory animus on the part of the University. See Mondero, 400 F.3d at 1213 ("An agent's biased remarks against an employee because of his or her gender are admissible to show an employer's discriminatory animus if the agent was involved in the employment decision."); Lam v. Univ. of Hawai'i, 40 F.3d 1551, 1560 (9th Cir. 1994) (noting that the university hiring process is "not insulated from the illegitimate biases of faculty members" and that among a group of fifteen decisionmakers, "even a single person's biases may be relatively influential").

fact as to either the Equal Pay Act claim or the Title VII claim. Defendant's

Motion for Summary Judgment is GRANTED. Judgment shall issue in favor of

Defendant.

IT IS SO ORDERED.

Dated:        Honolulu, Hawaii, ___28 December___, 2005.

_____
SAMUEL P. KING
United States District Judge